The Honorable Charlotte Schexnayder State Representative P.O. Box 220 Dumas, Arkansas 71639-0220
Dear Representative Schexnayder:
This opinion is being issued in response to your recent questions regarding the disbursement of fine proceeds by municipal courts. You have described a scenario in which a city operates a municipal court, and the county in which the city is located operates a separate branch of the municipal court. The city funds the operation of its municipal court entirely and receives all proceeds from fines. The county funds the operation of its branch of the municipal court entirely and receives all proceeds from fines.
You indicate that some tickets are issued for violations of state law that occur outside the city limits, and for violations of state law where the arresting officer is not an officer of the city. Some of these tickets are processed through the city's municipal court.
In light of this scenario, you have presented the following questions:
 (1) Should the city retain all fine proceeds from tickets issued outside the city limits pursuant to A.C.A. § 16-17-707(b) because the city receives no funding from the county? or
 (2) Should the city pay fine proceeds from tickets issued outside the city limits to the county's municipal court branch pursuant to A.C.A. § 16-17-707(c)? or
 (3) Are subsections (b) and (c) incompatible in this situation, thus requiring legislation to clarify the amounts that should be paid to the county treasury?
RESPONSE
Because the issues that you have raised are so closely intertwined, they must be addressed together rather than in response to the three separate questions.
It is my opinion that the city must pay fine proceeds to the county pursuant to A.C.A. § 16-17-707(c), where the ticket in question was issued for a violation of state law that occurred outside the city limits or where the ticket in question was issued for a violation of state law in which the arresting officer was not an officer of the municipality.
A.C.A. § 16-17-707 requires municipal court clerks to create three separate accounts. The second of the three classes of accounts described in the statute is comprised of fines, penalties, forfeitures, fees, and costs arising out of the types of violations give rise to your questions. More specifically, A.C.A. § 16-17-707(a)(2) states:
 The second class of accounts shall embrace all cases arising out of violation of any of the laws of the state where the arresting officer was not a police officer or other officer of the municipality, or where the offense was committed outside the corporate limits of the city and the arrest was made by a state police officer, and in all other criminal proceedings not specifically enumerated in this section.
A.C.A. § 16-17-707(a)(2).
The required disposition of the funds in this account is set forth in A.C.A. § 16-17-707(c), which states:
 After deducting the fees and costs due the sheriff and constables, the municipal court shall pay into the city treasury all sums arising from the first class of accounts, and shall pay all sums arising out of the second class of accounts into the county treasury.
A.C.A. § 16-17-707(c).
Because the violations that you have described fall squarely within the provisions of A.C.A. § 16-17-707(a)(2), I must conclude that the sums arising out of those violations must be placed in the second class of accounts, and must, in turn, be paid to the county, as required by A.C.A. § 16-17-707(c).
Some confusion with regard to this issue could arise out of the provisions of A.C.A. § 16-17-707(b), which states:
 After deduction and remittance of those fees permitted and authorized in this subchapter, the balance shall be disbursed to the treasurers of the political subdivisions which contribute to the expenses of the municipal court in proportionate amounts as each pays to the court.
A.C.A. § 16-17-707(b).
It is my opinion that the provisions of A.C.A. § 16-17-707(b) require disbursement of amounts that are left after the remittances to the city and to the county pursuant to A.C.A. § 16-17-707(c) have been carried out.
I base this conclusion on the reference in A.C.A. § 16-17-707(b) to the "deduction and remittance of those fees permitted and authorized in this subchapter." The remittances that are referenced in A.C.A. § 16-17-707(c) fall with this category. An interpretation of § 707(b) under which a disbursement to the political subdivisions is allowed before remittance to the city and county treasuries under § 707(c) would cause § 707(c) to have no meaning or effect, because there would be nothing left to remit to the city and county treasuries pursuant to § 707(c) if disbursement to the political subdivisions pursuant to § 707(b) had already occurred. The Arkansas Supreme Court has held that statutory language must be interpreted so as to give effect, as far as practicable, to every part of the statute, reconciling the provisions to make them consistent, harmonious, and sensible. Omega Tube Conduit Corp. v. Maples,312 Ark. 489, 850 S.W.2d 317 (1993); McGee v. Armorel Public Schools,309 Ark. 59, 827 S.W.2d 137 (1991).[1]
I must therefore conclude that A.C.A. § 16-17-707(b) directs the disbursement of those amounts that are left after disposition pursuant to A.C.A. § 16-17-707(c).
Accordingly, it is my opinion that the city about which you have inquired must pay the county the sums that arise out of violations of state law that occur outside the city limits or violations of state law in which the arresting officer is not an officer of the municipality.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Because such a reading is possible in this instance, I find it unnecessary to conclude that legislative clarification is the only solution to the confusion that may arise out of § 707(b).